# Exhibit 50



April 19, 2019

Cummings, McClorey, Davis & Acho, PLC
310 West Front Street
Suite 221
Traverse City, MI 49684

Attention: Haider Kazim

                                          **Re:   Dwayne Greene**
                                                   **Claim #: Dwayne Greene**
                                                    **EW Case: 20712543**

Case No.: 2:18-cv-11008-MAG-DRG

Dear Mr. Kazim:

I am in receipt of multiple records including depositions, video evidence, as well as medical records regarding the above-named decedent, Dwayne Greene. The opinions that are expressed in this report will be based on the records which I was provided. I did not personally examine Mr. Greene as he deceased prior to my receiving these records. The opinions expressed in this report are to a reasonable degree of medical certainty.

**RECORD REVIEW:**

- Deposition of Joel Avalos, who is apparently a corrections officer in the Crawford County Jail. Mr. Avalos apparently was working as a corrections officer during the time that Mr. Greene was incarcerated in December of 2017. This deposition is reviewed, including the particulars of Mr. Avalos' job, etc., including his training in mental health, first aid, etc. The questioning of Mr. Avalos involves his familiarity of the symptoms of alcohol withdrawal. This deposition is reviewed. The report is reviewed. Mr. Avalos gives testimony that he does not know the difference between "a medical" and a "mental" hallucination. His testimony indicates that he would rely on Community Mental Health to make this distinction. He also indicates that he has had little, if any, training on the evaluation or management of alcohol withdrawal in the jail facility where he is employed. Joel Avalos does testify that he saw the decedent wandering about his jail

20300 West 12 Mile Road ▪ Suite 103 ▪ Southfield, MI 48076 ▪ Phone: 888.833.1811 ▪ Fax: 248.350.0055

Page: 2
Re: Dwayne Greene
Date: April 19, 2019

cell in a disheveled fashion, apparently talking to himself, etc.  He then found the decedent unresponsive.

- Deposition testimony of Randell Baerlocher.  This testimony is given on February 20, 2019.  Mr. Baerlocher is a "captain" in the jail system and also is the jail administrator per his testimony.  Mr. Baerlocher testifies that he has responsibilities for training personnel in policies and procedures within the jail system in Crawford County.  Mr. Baerlocher testifies that he now understands that delirium tremens is a "serious medical issue."  He testifies that he did not understand this prior to December 4, 2017.  Mr. Baerlocher testifies that, in Crawford County, inmates experiencing severe alcohol withdrawal "were to be observed in the drunk tank without any referral for medical."  Mr. Baerlocher also testifies that there are no policies or procedures or guidance with respect to criteria for determining whether or not someone is going through alcohol withdrawal.  There is testimony in this deposition that Officer Baerlocher was in possession of information regarding alcohol withdrawal and medical referral prior to the decedent being incarcerated.  Mr. Baerlocher also testified that he did not contact any of the available nursing staff regarding the decedent, Dwayne Greene.  There is also testimony that the Northern Lakes Community Mental Health facility does not provide medical services.  Mr. Baerlocher testifies that available physicians, neither Dr. Ashley nor his two physician's assistants, were contacted regarding Dwayne Greene.  The testimony also indicates that there is no procedure in the Crawford County Jail for ensuring that individuals showing signs of withdrawal are monitored by qualified healthcare professionals.  The testimony from Mr. Baerlocher also indicates that his conversation with the community mental health practitioner who evaluated Mr. Greene indicates that this practitioner told him that "she believed he was suffering from alcohol withdrawal. Mentally, she did not see that he was doing okay."  "She believed it was alcohol withdrawal and it wasn't a mental thing."  Mr. Baerlocher testifies that he utilizes Northern Lakes Community Mental Health to help identify medical issues.  Mr. Baerlocher testifies that his institution does not abide by standards set forth in the "Standards for Adult Correctional Institutions, Fourth Edition."  Mr. Baerlocher repeatedly testifies that there are no policies and procedures in the Crawford County Jail to recognize or refer inmates suffering from alcohol withdrawal.

Page: 3
Re: Dwayne Greene
Date: April 19, 2019

- A first aid certificate for Amy Johnson for "Mental Health First Aid."  This is dated October 13, 2017.  There is a photograph identified here, which is labeled Exhibit 1.  There are other photographs, apparently from the jail.  Other exhibits are also appended here regarding certificates of education, etc.
- Schedule of depositions, etc., which is reviewed as well as additional training certificates for various employees of the jail, some of whom have been deposed here.
- Response to interrogatories, which is an exhibit, dated November 29, 2018.
- A description of video footage.
- A listing of apparently descriptions of video, which is also marked as an exhibit.  Multiple pages of these descriptions of video surveillance cameras from the jail are here reviewed.  There are several dozen of these pages of video camera descriptions.
- Copies of text messages, which are reviewed.  The text messages are dated December 9, 2017.
- Resume from Stacey Kaminski from Lake City, Michigan.  This resume is reviewed, a mental health caseworker.
- Photographs from apparently the Crawford Jail are reviewed here.
- Multiple additional photographs from the jail are reviewed.  They are dated December 7, 2017.
- Handouts from the "USA Mental Health First Aid," indicating there are medical conditions and their severity.
- Additional training materials are reviewed here.
- Substance use training materials reviewed here.
- Additional transcripts are reviewed regarding previous training for Stacey Kaminski.
- Multiple pages of these transcript reports are reviewed for Nanci Karczewski.
- Additional e-mail correspondences regarding Freedom of Information requests.  These are dated December 29, 2017.
- Notes including "Northern Lakes Community Mental Health Jail Crisis Screening Contact."  This is dated December 7, 2017, 2:00 p.m., indicating "jail staff requested a CMH contact for Dwayne.  He had come to the jail earlier in the week after going to court on Monday while intoxicated.  He was jailed and planned for detox and then rehab was delayed due to his condition during his hearing."  He was "very delusional during

Page: 4
Re: Dwayne Greene
Date: April 19, 2019

the conversation with this worker.  He was able to answer basic questions to provide his date of birth and occupation and a few other questions.  When questioned about why he was in jail, he was able to report what had happened during the court appearance."  "Attempted to assess Dwayne, very difficult process due to his delusional behavior while going through the DTs."  "There are risk factors that include significant alcohol use as well as the psychosis that is currently present," signed by Nanci Karczewski on January 3, 2018.

- A "mental health services request" dated December 7, 2017, indicating "he is delusional while experiencing alcohol withdrawal."  "He is struggling with DTs.  He does not appear to be a risk to himself."

- Policies and procedures regarding Northern Lakes Policies.  This is reviewed.

- Copies of licensure and notes from Stacey Kaminski, indicating "Certified Advanced Alcohol and Drug Counselor."

- A Crawford County Jail office daily log report for December 4, 2017, to December 8, 2017, is reviewed.

- Report regarding "International Certification and Reciprocity Consortium Counselor Domains."  Part of this training includes "screen for risk of harm to person served and/or others including signs, symptoms, and appropriate responses to high-risk medical complications including withdrawal, medication toxicity, and overdose."  This report includes "requirement for knowledge of pharmacology, physiological effects of substances, and withdrawal syndromes."  Indicates "clinical indications for referral."  There was a description here on "table 6" indicating "identify and evaluate the needs of the person served that are outside of the counselor's scope of practice and refer to other professionals as appropriate."  This does include "identifying clinical and medical indicators that are outside the scope of practice."  There is also a statement "protect the integrity of the profession and best interests of persons served by identifying and addressing unethical practices."

- Additional photographs from video clips are also reviewed here.  They are dated December 6, 2017.

- Documents from 46th Circuit Court, "jury status conference."  These documents are reviewed.  Apparently deals with the court appearance of Dwayne Greene.  This is dated

Page: 5
Re: Dwayne Greene
Date: April 19, 2019

December 4, 2017.  Apparently, the decedent was in the court room with significant intoxication.  He was thus remanded to the jail for "drying out."

- Additional photographs of video clips are dated December 8, 2017, as well as December 6, 2017.

- Additional photographs of video clips from December 7, 2017, are also reviewed here.

- A chapter from a book titled "First Aid for Mental Health Crises."  This is again an exhibit appended to a deposition.

- A chapter which is entitled "First Aid for Medical Emergencies for Alcohol Abuse."  Under "when to call an ambulance," "has delirium tremens, a state of confusion and visual hallucinations."

- Additional legal documents including proof of service.  These are reviewed here.

- Requests regarding information, which are reviewed here.

- Copies of exhibits including mental health service request exhibits including previous evaluations by Nanci Karczewski.  These are redundant copies.

- Copies of jail services data regarding a mental health provider at the jail.  Training assessment and treatment are reviewed here.

- A presentation regarding "Mental Health First Aid," which is reviewed here.  Part of this training includes "medical emergency" including a situation of "confusion, disorientation, or unconsciousness."  This training on Mental Health First Aid includes "assess for withdrawal."  Under types of disorders where psychosis may develop, there are multiple mental health issues.  Module here on substance use disorders as well.  Under "when to call an ambulance," "call 911 when the person has delirium tremens, a state of confusion and visual hallucinations."  This module is "Mental Health First Aid USA for Law Enforcement, Corrections, and Public Safety Curriculum Supplement."

- Continuation of the exhibit which includes mental health first aid for public safety detailed agenda, which apparently is in the training program.  There is focus on substance use disorders as well as "most serious aspects of the issue." This training program is reviewed.  There is consideration given to emergencies in alcohol withdrawal.  There are multiple scenarios here also reviewed with various mental health diagnoses.  One of the scenarios presented is indeed of a jail inmate whose "jail staff notices that he does not seem oriented to time or place.  His hands are shaking and his

Page: 6
Re: Dwayne Greene
Date: April 19, 2019

gait is unsteady. He keeps walking around touching other inmates and they respond by threatening him." Sign-in sheets for Mental Health First Aid.

- General video capture photographs from December 6, 2017, are reviewed.
- Jail record reviewed regarding the decedent.
- "Medical screening" regarding the decedent dated August 5, 2017. Crawford County jail booking report regarding the decedent which is reviewed here. This is dated August 5, 2017.
- Additional pages of this screening and booking report are reviewed. There is a "Jail Standards for the American Correctional Association" which are reviewed. Again, this represents standards of care for incarcerated individuals. Again, one of the standards is "process for an observation for high-risk events such as seizures, detoxification, head wounds, and so forth."
- Additional timelines regarding video captures which are reviewed here. Multiple pages of these timelines are reviewed.
- "Northern Lakes Policies Support Services for Law Enforcement Jail Services" which is reviewed.
- "Instructor Certificates" for Mental Health First Aid USA including for Joni Blamer, apparently completed the five-day course. Additional Mental Health First Aid sessions are reviewed here. This includes training regarding presence of withdrawal, psychotic events. Some of this material appears redundant to me. One of the sections deals with psychotic disorders as well as "drug-induced psychosis." One section is entitled "Assess a Person for Alcohol Poisoning or Severe Withdrawal." There is also a section entitled "Assisting with a Medical Emergency for Alcohol Abuse, Alcohol Intoxication, Poisoning and Withdrawal." Also "When to Call an Ambulance When a Patient has Delirium Tremens." Some of this material appears redundant and previously reviewed here.
- Multiple additional pages of this Mental Health First Aid training course are reviewed here. Additional video captures from jail are reviewed from December 6, 2017.
- Several notes from attorneys indicating scheduling depositions.
- Sign-in sheet from the Mental Health First Aid training which is dated February 29, 2012. The sign-in sheets from 2013 are reviewed, as are multiple sign-in sheets from different

Page: 7
Re: Dwayne Greene
Date: April 19, 2019

dates in 2013.  Sign-in sheets from 2016 and 2015 are also reviewed here from Mental Health First Aid training.

- Sign-in sheet from August 29, 2017, is reviewed.

- A "daily log jail report" dated December 4, 2017, which is reviewed.  Multiple pages of this jail log are reviewed from December 6, 2017.  Log notes from December 7, 2017, are also reviewed here.

- "Incident report" for date of December 8, 2017, indicating inmate transported to Grayling, Michigan.  This is dated January 23, 2018.

- A medical response report dated January 23, 2018, indicating "inmate death."  Indicates that EMS response indicated jail staff performing CPR on the decedent."  We learn the subject's name was Dwayne Greene and he was holding for alcohol charges."  "Was being observed for DTs."  There is a re-description of the decedent's bizarre behavior, hallucinations, prior to his becoming unresponsive.  Multipage report is a police report signed by lieutenant, John McDonald, apparently a detective.  Signed statements from jail employees regarding the response to finding the decedent unresponsive.  There are some policies regarding emergency services from "Northern Lakes" reviewed here.

- Additional video captures from December 6, 2017, are reviewed.  Multiple pages are reviewed here.

- Redundant copies of court proceedings regarding the decedent dated December 4, 2017.  Video captures are reviewed as jail records which are reviewed here.  Some of these appear redundant.  Training material on substance use disorders which are reviewed here.  General jail photographs are reviewed from December 7, 2017.  There is a tray manual for "First aid for mental health crises" which is reviewed as an exhibit.  This material appears to be redundant.

- "Crawford County Avalanche Agreement addresses care for residents with mental illness in criminal justice system."

- Additional responses regarding request for documents.  There are documents including "administrative rules for jails and lockups in the state of Michigan."  Screening guidelines are established including use of alcohol and other drugs.  Additional pages of these screening and appraisal guidelines are reviewed here.  Pages of inmate rights and policies are reviewed here.  Under guidelines for referral designation for emergencies

Page: 8
Re: Dwayne Greene
Date: April 19, 2019

"active suicide attempt, severe mental deterioration, unmanageable with normal protocol for safety and control, petition or emergency intervention necessary."

- Forms regarding booking information and other procedures are reviewed. These are blank forms.

- Additional notes indicating State of Michigan notes indicating "Self-audit of jail indicates that it meets the requirements for compliance." Self-audit forms are blank and are reviewed here. Additional State of Michigan inspection notes for Crawford County are reviewed from 2017 with associated inspection reports and inspection forms. These are reviewed. Inspection reports from 2018 are also reviewed.

- "Incident report" regarding the events of the jail on December 8, 2017, which are reviewed here. Some of this appears to be redundant. This again recounts the incidents of December 8, 2017. This material is again re-reviewed.

- Additional video captures are reviewed, some of these appear to be redundant. They are dated December 7, 2017.

- Deposition of Larry Foster regarding this case. This is dated February 20, 2019. This deposition is reviewed including questions from defence and plaintiff's counsels. Multiple exhibits are attached to this deposition. Mr. Foster testified that he is not currently employed but was employed by the Crawford County Sheriff's Department. He worked as a corrections officer. He apparently worked until December of 2018. Mr. Foster testifies that he went through mental health training regarding "what to do in face of an inmate going through alcohol withdrawal." Mr. Foster testifies that he observed the decedent hallucinating on several occasions while he worked there. Mr. Foster testifies that as part of his training about the severity of alcohol withdrawal, he would contact EMS for inmate to be taken to the hospital. They thought it was severe enough. Mr. Foster testified that he was trained, as part of his training, to evaluate and refer inmates undergoing alcohol withdrawal. Later, Mr. Foster testifies that he did not know that hallucinations or delusions could be symptoms of alcohol withdrawal. There are multiple exhibits attached to this including copies of summons and complaints, general allegations, etc. There are factual allegations in this court document. Multiple pages of these complaints and allegations are here reviewed. There are demands for trial by jury.

Page: 9
Re: Dwayne Greene
Date: April 19, 2019

- Postmortem examination report, which is dated December 13, 2017, signed by E. Douglas, M.D., who is a pathologist.  Cause of death is noted to be alcohol cardiomyopathy, hepatomegaly, gastric ulcers, and alcohol withdrawal.  Other diagnoses are also reported here.  Diagnoses "acute bronchopneumonia."  Cause of death is "complications of chronic alcohol use."

- Also attached is a neuro pathology report, which is reviewed.  This is dated December 13, 2017, and signed by E. Douglas, M.D.

- Spectrum Health medical record dated January 16, 2018, indicating a surgical pathology report, indicating the same information previously reviewed.  Additional pages of the pathology report are reviewed.  They are redundant.

- The Sacred Heart record dated December 27, 2017, indicating "on November 27, 2017, Sacred Heart Rehabilitation received phone call from Macomb County Access Center with Dwayne Greene on the line."

- List of individuals in booking area, which is reviewed here.  This list indicates persons in the booking area on a daily basis in December 2017.

- In December 2017, there is a video log which is reviewed, which is a multipage video log, which has previously been identified in these records.  Multiple pages of this video log are reviewed from December 6, 2017; December 7, 2017; and December 8, 2017.

- Copy of mental health service request with Northern Lakes Community Mental Health screening contact.  This is a redundant note previously reviewed.  "Jail crisis screening contact," which is redundant, previously reviewed.  Report again indicates "attended to assess Dwayne, very difficult process due to his delusional behavior while going through the DTs", signed by Stacey Kaminski, L.P.C., and by Nancy Karczewski dated January 3, 2018.

- Jury status conference transcript.  This again is a redundant copy of the court room proceedings regarding Dwayne Greene.

- Toxicology report regarding Dwayne Greene which is dated December 20, 2017.  Date of death is December 12, 2017 indicating positive for benzodiazepines (lorazepam) as well as antibiotics.  Negative for other substances tested.

- Death certificate regarding Dwayne Greene dated December 12, 2017, indicating cause of death "pending."

Page: 10
Re: Dwayne Greene
Date: April 19, 2019

- Daily log of the jail report indicating daily report, which is redundant report, previously reviewed here. This is for the dates in December during Mr. Greene's incarceration.
- Copies of text messages dated December 7, 2017, "Greene is still going through DTs, he has not slept nor ate much, hallucinations, etc. A CMH seen and spoke to him. She said he is showing classic signs of withdrawal."
- Copy of text messages previously reviewed between jail employees.
- Crawford County Interagency Agreement regarding mental health services and Jail Diversion Services. This report is reviewed. Previously had been identified in other exhibits.
- Corrections inmate healthcare policy which is reviewed, again indicating administrative rules for jails and lockups. Rights policies are reviewed. Inmate admission policies are reviewed. Inmate classification policies are reviewed. Redundant and previously reviewed here.
- Health appraisal policies are reviewed. Again indicates assessment by "healthcare professionals" will occur. Inmate mental health services policy is reviewed. This policy states "any employee taking notice of an inmate with severe depression or unusual behavior shall be diligent in taking any necessary action to ensure the inmate receives necessary services, either medical or mental," and indicates the distinction between emergent and urgent designations. This protocol has previously been reviewed. The policy states "the prevention of injury or the loss of life in this facility shall be the foremost concern of all employees."
- Crawford County jail records which I reviewed regarding dates in December 2017.
- Jail records from August 2017 regarding the decedent as well. These are redundant, previously reviewed records. Additional previously reviewed copies of summons and tickets are reviewed here. Booking, admission reports. These have previously been reviewed.
- Copy of incident report dated December 8, 2017, is reviewed here.
- EMS response report reviewed. This is a redundant report, previously identified. Alcohol use questionnaires are reviewed. These are redundant. Copies of incident reports are reviewed regarding the attention to the decedent on December 8, 2017.

Page: 11
Re: Dwayne Greene
Date: April 19, 2019

- Sherriff's report of a traffic stop on August 7, 2017, is reviewed.  Additional copies of jail records regarding the decedent from August 2017 are reviewed.  These are redundant.
- Deposition of Amy Johnson, which is dated February 26, 2019.  This deposition is reviewed.   Amy Johnson is a corrections officer at the Crawford County Jail.  Ms. Johnson does testify she participated in the training entitled "Mental Health First Aid USA."  Ms. Johnson testifies she was in the jail at that time and observing Mr. Greene around the time he was experiencing alcohol withdrawal.  Ms. Johnson testifies that after the assessment by the Community Mental Health worker, she felt "the inmate was going through DTs."  Ms. Johnson testifies that she was unaware the alcohol withdrawal was a "medical issue," despite her previous training.  Ms. Johnson did not call 911 at any point.  Ms. Johnson testifies "I don't feel we did anything wrong."
- Deposition of Stacey Kaminsky, L.P.C., which is dated November 30, 2018.  This deposition transcript is reviewed here.  Ms. Kaminsky is an employee of Northern Lakes Community Mental Health.  She is an "operations manager."  Deposition reviews her training and qualifications.  Ms. Kaminsky states delirium tremens is not a psychiatric condition, it is a medical concern.  Ms. Kaminsky testifies that she did request a mental health worker, Ms. Karczewski, to supplement the initial document regarding the visit with Mr. Greene.  She thinks that Mr. Greene was going through alcohol withdrawal as the cause of his psychosis.
- Deposition testimony of Nanci Karczewski.  This is dated November 29, 2018.  This deposition is reviewed.  Ms. Karczewski was the mental health worker for Northern Lakes Community Mental Health who did the assessment on Mr. Greene.  Ms. Karczewski is a limited license professional counselor.  Her experience and training are reviewed in this deposition.  Her training files are reviewed in this deposition.  Ms. Karczewski testified that she had no information from her supervisor to identify or manage inmates with severe alcohol withdrawal.  Ms. Karczewski testified about her arrival at the jail and her evaluation of Mr. Greene.  Ms. Karczewski indicates that she discussed with one of the corrections officers, Mr. Baerlocher, that Mr. Greene was going through alcohol withdrawal.  Ms. Karczewski testified she is unaware that delirium tremens requires medical treatment.
- Deposition of Mr. McClair is reviewed entirely.   Apparently, Mr. McClair was incarcerated at the Crawford County Jail at the same time as the late Mr. Greene.  Mr.

Page: 12
Re: Dwayne Greene
Date: April 19, 2019

McClair was incarcerated for drinking and driving. Mr. McClair describes Mr. Greene's hallucinations and bizarre behavior.

- Deposition of Renee Christman, and this is dated February 26, 2019. Again this deposition testimony of Renee Christman is reviewed indicating that Ms. Christman is an employee of Crawford County Sheriff's Department for 19 years. She is a corporal in the Corrections Department, "supervising correction officer shifts." She was deposed regarding her activities regarding the incarceration of Mr. Greene. Again, Ms. Christman indicates she did observe the decedent having signs consistent with alcohol withdrawal. This deposition is reviewed regarding her training to treat alcohol withdrawal. She has had very little, if any, training. This deposition continues with additional questions. The deposition indicates that Ms. Christman did not contact the nurse regarding Mr. Greene's symptomatology. The deposition indicates that Ms. Christman was unaware that the community mental health worker was not a licensed healthcare professional at the time she evaluated the decedent. Ms. Christman did understand "that it was not a mental health issue, it was a "physical issue." Ms. Christman testified that she had no particular training in identifying or referring inmates with alcohol withdrawal. Ms. Christman did observe the decedent having hallucinations. The testimony does indicate that Ms. Christman was willing to wait until December 8 when a nurse would be in the jail to identify the problems that Mr. Greene was having. Ms. Christman testified that she was aware that Mr. Greene had a history of alcohol abuse. Ms. Christman states "there were times we call a nurse when it appeared someone was having a heart attack or they were having a seizure. Generally, the nurse is there twice a week and she usually sees them before we would have to even go that distance." Ms. Christman testified she would not consider Mr. Greene's condition to be either "urgent or emergent." The officer further testified that she "should have known" about the effects of alcohol withdrawal. This deposition continues with further questions about Ms. Christman's training (or lack thereof) regarding medical emergencies in the jail.

- Deposition of John McDonald. This deposition is dated February 27, 2019. This deposition is reviewed. Mr. McDonald is a lieutenant with Crawford County and he is with the Sheriff's Department. Lieutenant McDonald was responding to a call by the medical emergency at the Crawford County Jail involving Dwayne Greene. Mr. McDonald testifies about his response with involvement of the EMS reports. Officer

Page: 13
Re: Dwayne Greene
Date: April 19, 2019

McDonald did not call for a "mission team" to evaluate the incident as he felt no regulations had been violated.

- Upon questioning Ms. Blamer, she states that there was no specific training about medical emergencies and calling 911. It is not the policy to have the assessment people direct the jail to call ambulances. Ms. Blamer does say she would recommend a medical evaluation if she thought that necessary. Ms. Blamer is the "chief population officer" at this mental health facility. She also has training in First Aid. Apparently, Ms. Blamer put on a training for the Crawford County Sheriff's Department and that is discussed in this deposition. This training did involve discussion and treatment of alcohol withdrawal including delirium tremens. Ms. Blamer indicates "excited delirium tremens is a medical condition and we are not medical professionals."

- Deposition of Donald Steffes, Jr. The date of this deposition is February 27, 2019. This deposition is reviewed entirely. Mr. Steffes is employed by the Crawford County Sheriff's Department. He is a corrections officer for 19 years. His deposition is reviewed including questions regarding his interaction with the decedent. Mr. Steffes has trouble recalling the symptoms of alcohol withdrawal, although he did receive training regarding this. Mr. Steffes again shares his unfamiliarity with the policies and procedures in the Crawford County Jail where he has worked for 19 years. Officer Steffes has very little recollection of the events surrounding the worsening alcohol withdrawal experienced by the decedent. Mr. Steffes is asked if it is fair to say "you don't have a very good recollection of the events from December 4 to December 8." Mr. Steffes says, "It is fair to say."

- Deposition of Timothy Stephan dated February 27, 2019. This deposition is reviewed entirely. Mr. Stephan is employed in Crawford County Sheriff's Department for 19 years. He is a corrections officer. Mr. Stephan did attend mental health training, as did many of the other deponents. Mr. Timothy Stephan discusses his knowledge (and lack of knowledge) of the policies and procedures at the Crawford County Jail. His memory surrounding the events that lead to Mr. Greene's demise are also very sketchy.

- "Are you an inmate in Crawford County Jail" and Mr. Schmidt answers yes. Mr. Schmidt gives testimony about being an inmate and indicates that he was indeed friends with Dwayne Greene. This deposition is reviewed indicating the relationship between Mr.

Defendants NLCMHA, Karczewski and Kaminski's Rule 26a2 Disclosures 000013

Page: 14
Re: Dwayne Greene
Date: April 19, 2019

Schmidt and Mr. Greene.  Mr. Schmidt is shown different videos and replies to questions regarding these videos.

- Deposition of Shon Chmielewski.  This is dated March 7, 2019.  This deposition is reviewed including questions from different attorneys.  The deposition indicates that Mr. Chmielewski is a "road patrol sergeant."  He has been in that position for nine and half years.  This deposition continues regarding his role regarding the arrest and jailing of Mr. Greene.  Mr. Chmielewski he did not have responsibility for inmate custody, he is not working at the jail, but he is a road patrol officer.  This details the account of Mr. Chmielewski.

- Deposition of Dale Suiter, which is dated March 7, 2019.  This deposition is reviewed entirely.  The attorneys are identified and are the same.  Mr. Suiter is a corrections officer at the Crawford County Sheriff's Department.  He has worked there for nine years.  Mr. Suiter did complete the training classes which are described in the exhibits above including Mental Health First Aid.  Mr. Suiter also understands that delirium tremens is a "symptom of alcohol withdrawal."  Mr. Suiter was working in the jail at the time that Mr. Greene was incarcerated.  Mr. Suiter has trouble recalling events around that time, specifically whether he was briefed on Mr. Greene's condition.  Officer Suiter does indicate that he was aware that his training indicated that he should call an ambulance for someone experiencing hallucinations in the course of alcohol withdrawal.  "Officer Suiter understands that alcohol withdrawal is a medical issue."  Mr. Suiter says that he called CMH for the purpose of "making sure that it's not anything mental health related."  He would "either call EMS or get him to the nurse."  Mr. Suiter indicates that an inmate going through hallucinations who has been cleared by CMH would not be eligible for EMS transport to an emergency room or evaluation other than to "wait for the nurse."  Mr. Suiter had the opinion that the representative from the CMH who visited the jail had the ability to "supervise alcohol withdrawal."

- Deposition of Katie Tessner.  This deposition is dated February 26, 2019.  Ms. Tessner works for Crawford County Sheriff's Department and is a corrections officer.  Officer Tessner also participated in the "Mental Health First Aid" training program via the county jail.  Officer Tessner states that "Dwayne Greene was likely to experience alcohol withdrawal based on her experience."  Officer Tessner answers "I don't know" when asked about the adequacy of her training or the inadequacy of the training she received

Defendants NLCMHA, Karczewski and Kaminski's Rule 26a2 Disclosures 000014

Page: 15
Re: Dwayne Greene
Date: April 19, 2019

at the Crawford County Sheriff's Department about the signs and symptoms of alcohol withdrawal. Officer Tessner testifies that she "doesn't know under what circumstances she would call a nurse into the jail on a day when she is not supposed to be in jail for an inmate going through alcohol withdrawal."

- Deposition of Marvin Townsend, which is dated Friday, November 30, 2018. This deposition is reviewed in its entirety. Mr. Townsend was an inmate at the Crawford County Jail in late 2017 at the same time that Mr. Greene was incarcerated. Mr. Townsend describes his interaction with the jail as well as his observations about Dwayne Greene. Mr. Townsend does testify that he witnessed Dwayne Greene having hallucinations, etc.

- Deposition of Kirk Wakefield, which is dated March 7, 2019. This deposition is reviewed in its entirety. Mr. Wakefield is currently retired but worked at the jail beginning in 1983. He was a road patrol deputy with the Sheriff's Department and was the sheriff of Crawford County. Mr. Wakefield states that he and the under-sheriff both had responsibility for the jail. Mr. Wakefield testifies that he understood there was a medical care policy under which circumstances that 911 needed to be called. Retired Sheriff Wakefield is questioned about his knowledge of policies and procedures regarding Northern Lakes Community Mental Health Authority. Sheriff Wakefield indicates that he had stated to the media that an investigation would take place regarding the death of Dwayne Greene.

## SUMMARY:

To summarize the events in this case, Mr. Dwayne A. Greene was 32 years old at the time of his death on December 12, 2017. He was treated at Munson Healthcare Grayling Hospital from December 8th through December 12, 2017, where he died due to anoxic brain damage complicating a cardiopulmonary arrest. This cardiopulmonary arrest occurred at the Crawford County Jail where he had been lodged as an inmate since December 4th.

Mr. Greene was known to be alcoholic and suffered from an alcohol use disorder. He was incarcerated after his appearance in court and had been consuming alcohol. He was scheduled to go into an alcohol rehabilitation program but was remanded to the Crawford County Jail because of his intoxicated state while in the court. His blood alcohol level at the jail on

Page: 16
Re: Dwayne Greene
Date: April 19, 2019

December 4, 2017, was estimated to be 0.194.  Mr. Greene was incarcerated despite the knowledge that he has a history of alcohol withdrawal and was at risk for significant consequences from alcohol withdrawal.  While incarcerated, Mr. Greene was placed in a holding cell and was observed over the next three and a half days to become progressively more anxious, agitated, and then frankly psychotic.  He was clearly suffering from delirium tremens as noted in multiple deposition testimonies, as well as jail documentation.  At no time during his incarceration at the Crawford County Jail from December 4th through December 8th did he see a medical health professional.  He did not see a doctor, nurse, physician's assistant, or nurse practitioner to evaluate his alcohol withdrawal and his worsening delirium tremens.  He was briefly evaluated by a community mental health worker and was found to have no risk of self-harm or violence.  This mental health worker, Nanci Karczewski, is a community mental health therapist.  She was supervised by Stacey Kaminski, also an employee at community mental health.  Ms. Karczewski evaluated Mr. Greene briefly on December 7th when he was clearly exhibiting psychotic behavior and suffering from profound advanced alcohol withdrawal with delirium.  Ms. Karczewski correctly determined that Mr. Greene was not suffering from a primary mental health disorder but was, rather, suffering from alcohol withdrawal.  At no point was Mr. Greene referred for medical evaluation by either a nurse, nurse practitioner, physician's assistant, or physician.  He was not treated medically until he suffered a cardiopulmonary arrest on December 8, 2017.

While incarcerated in the Crawford County Jail, Mr. Greene was in contact with multiple employees of the county who worked as corrections officers, supervisors, captains, etc., almost all of whom had taken a prescribed course in the management of mental health urgencies and emergencies.  As part of this training, there was instruction regarding the referral of patients with alcohol withdrawal issues for medical management.

**OPINION:**

By the way of introduction, I am a physician licensed to practice in the State of Michigan since 1981.  I am trained and board certified in the specialties of Internal Medicine, Medical Oncology, Addiction Medicine, and I am certified in Pain Management.  I have a private practice in Ypsilanti, Michigan, and have been in this practice for 20 years.  I am also a Clinical Assistant Professor of Anesthesiology at the University of Michigan, and attend in the Back and Pain

Page: 17
Re: Dwayne Greene
Date: April 19, 2019

Center weekly.  My specialty is treating patients with substance use disorders, addiction, as well as chronic pain management.  I attended the University of Michigan Medical School and trained in internal medicine at the Michael Reese Hospital in Chicago, Illinois.  I trained in Medical Oncology at the University of Michigan and also trained in the specialty of Nuclear Medicine at the University of Michigan.  I am certified by the American Board of Addiction Medicine and the American Board of Internal Medicine, and the subspecialty board of Medical Oncology.  I am a Fellow of the American College of Physicians and a Distinguished Fellow of the American Society of Addiction Medicine.  Overall, in my career, I have treated many hundreds of patients suffering from alcohol withdrawal as well as other forms of withdrawal including sedatives, opioids, and stimulants.

Based on my review of the available information, including jail records, deposition summaries, and hospital records, it is clear to me that Mr. Greene indeed suffered from an alcohol use disorder of a profound nature.  He developed significant tolerance to alcohol.  His blood alcohol level on a breath test was estimated to be 194 mg percent at the time he was admitted to the Crawford County Jail on December 4, 2017.  He was not suffering outward signs of intoxication, indicating he had developed a profound tolerance to beverage alcohol.  Such tolerance to alcohol is a clear warning that he was at very high risk for suffering withdrawal symptoms once the alcohol in his body was metabolized.

Alcohol withdrawal occurs after an individual consumes alcohol for a period of time and abruptly stops.  The symptoms and severity of alcohol withdrawal depend on the length of time the individual has been consuming alcohol, the amount of alcohol consumed, the underlying medical conditions in the individual, as well as the use of other substances concomitantly with alcohol.  Alcohol withdrawal can range from minor symptoms such as insomnia, tremulousness, headache, and agitation to very severe complications such as seizures, delirium, psychosis, and vascular collapse and death.

Alcohol withdrawal is generally graded in three stages.   Stage I involves sweating, tremulousness, tachycardia, anxiety, and other associated symptoms of cessation of alcohol. This may indeed resolve spontaneously in a patient who is not very heavily alcohol dependent. Stage II alcohol withdrawal is all of the symptoms of stage I accompanied by worsening vital

Page: 18
Re: Dwayne Greene
Date: April 19, 2019

signs including higher blood pressure, higher heart rate, and more somatic symptoms such as anxiety, tremulousness, and insomnia accompanied by overt hallucinosis with insight. In this case, the patient will experience hallucinations but will himself or herself realize that these indeed are hallucinations and know that they are not real. Stage III alcohol is frank delirium and is characterized in most medical terminology as "delirium tremens." This condition involves all of the symptoms of stage I and stage II alcohol withdrawal with worsening vital signs, worsening delirium, and frank psychosis, that is, hallucinosis without insight. The patient will be frankly psychotic, delirious, and very agitated. This is a very dangerous state and carries a mortality of between 10 and 20 percent if not treated medically.

It is clear from my review of the case material and medical material presented that Mr. Greene not only suffered from alcohol use disorder/alcoholism but also was observed over the course of four days in the Crawford County Jail to suffer all of the stages that I have described of alcohol withdrawal up to and including delirium tremens with eventually vascular collapse and Mr. Greene's unfortunate demise.

Advanced alcohol withdrawal is, thus, an emergency medical health problem and not a mental health problem. There was some confusion in the various deposition testimonies I reviewed, but it should be clear that delirium tremens and alcohol withdrawal (of any stage) does indeed have mental symptoms (anxiety, agitation, hallucination, psychosis) but is, in effect, a medical problem in much the same way a closed head injury may produce mental symptoms (bizarre behavior, depression, etc.) but is, in fact, a medical/neurological problem and not a psychiatric disorder per se. Thus, it is my opinion and the opinion of other experts in the field of addiction medicine that alcohol withdrawal requires a specific medical treatment, not any type of mental health treatment. Non-healthcare professionals such as counselors, social workers, etc., are not qualified to diagnose or treat alcohol withdrawal and delirium tremens.

As is identified in jail video evidence as well as the depositions of multiple employees of the jail in Crawford County, Mr. Greene was kept in an observation cell and not afforded any type of medical attention while incarcerated. In my opinion, the time to refer Mr. Greene for medical evaluation and medical attention was at the very time he was admitted to the jail and found to have a blood alcohol level of 0.194 mg percent. This placed Mr. Greene at very high risk for

Defendants NLCMHA, Karczewski and Kaminski's Rule 26a2 Disclosures 000018

Page: 19
Re: Dwayne Greene
Date: April 19, 2019

undergoing alcohol withdrawal and would require medical evaluation and treatment. This was not accomplished. Certainly, as time went on during Mr. Greene's incarceration, with worsening symptoms, there was even more urgency to refer Mr. Greene for medical attention either to the jail nurse or to a local hospital via ambulance. Certainly, by the time Mr. Greene began exhibiting bizarre behavior with hallucinosis and non-purposeful behavior, he should immediately have been taken to a hospital and treated for advanced alcohol withdrawal. The deposition testimony of essentially all of the corrections officers that had contact with Mr. Greene while incarcerated displays profound lack of understanding of the need for medical attention to a given inmate. It is interesting to note that in several of the depositions I reviewed, the deponents indicate that they would indeed refer an inmate to immediate medical attention if they suffered "uncontrolled vomiting" or "severe chest pain." While these conditions certainly would be sufficient to warrant an emergency referral for medical attention, many other conditions could be identified that would also lead to a decision to transport an inmate for immediate/emergency medical care and attention. Alcohol withdrawal is one of these conditions.

The decision to have a community mental health therapist evaluate Mr. Greene for psychiatric illness is, in my opinion, unnecessary and unreasonable. Based on the training provided to the overwhelming majority of the corrections officers who had contact with Mr. Greene, his state and symptomatology should have prompted an immediate referral for medical attention as early as December 4th and certainly by December 6, 2017. It is disheartening to this clinician to watch the clock tick by on December 5th, 6th, and 7th where Mr. Greene becomes progressively more and more agitated and delirious without any of the jail employees taking it upon themselves to summon a medical professional. Based on the material reviewed, these employees did have the training, experience and, in my opinion, the knowledge to identify where an inmate was suffering from significant medical illness requiring urgent medical attention. Based on multiple testimonies, it was clear that a nurse was available on a 24-hour-per-day, seven-day a week basis but only visited the jail twice per week (Tuesdays and Fridays). This availability was not brought to bear on Mr. Dwayne Greene. In my opinion, a direct referral for medical care via the jail nurse as early as December 4th and 5th would have resulted in treatment that, in my opinion, would have prevented his death.

Page: 20
Re: Dwayne Greene
Date: April 19, 2019

The fact that none of the jail employees contacted a medical professional before, during, or after the visit from the community mental health therapist (Ms. Karczewski) was a grave error. The "mental health evaluation," in my opinion, had no bearing on Mr. Greene's need for medical attention. With or without this "mental health evaluation," the jail employees knew or should have known that he was suffering from profound alcohol withdrawal ("detox" in their parlance), and based on their training and undoubtedly upon their previous experience in the jail, they should have referred him for urgent medical attention.

To summarize, it is my expert opinion that the decedent, Dwayne Greene, suffered from alcohol use disorder, suffered from profound, progressive alcohol withdrawal up to stage III (delirium tremens), suffered vascular collapse and death from this condition. It is my opinion that this death was preventable had he been referred for medical attention at the time of his evaluation in the jail and certainly before December 6th or 7th, when he became much more agitated and began to display psychotic behavior. Mr. Greene was clearly experiencing profound alcohol withdrawal, a medical emergency, and required medical attention. The presence (or absence) of a mental health evaluation is, in my opinion, not relevant to this case. Mr. Greene suffered from a medical emergency, and needed medical attention. He died from his medical disorder. The employees of the Crawford County Jail remained indifferent to his condition throughout his incarceration and did not summon medical help until he suffered a cardiac arrest on December 8, 2017. It is my opinion, that had Mr. Greene been referred for medical evaluation and treatment on an emergency basis on December 4th or 5th, he would more likely than not be alive today. After Ms. Karczewski told Captain Baerlocher that Mr. Greene was not suffering from a mental health issue but was going through alcohol withdrawal, the Jail should have referred Mr. Greene emergently for medical care.

Page:  21
Re:  Dwayne Greene
Date:  April 19, 2019


Sincerely,


Herbert Lewis Malinoff, M.D., FACP, FASAM
Board Certified, Internal Medicine
Board Certified, Internal Medicine, Subspecialty Board of Medical Oncology
Board Certified, American Board of Addiction Medicine
American Board of Quality Assurance and Utilization Review Physicians


HLM/modl/db




**REFERENCES:**

1.   Bayard, M., et al., "Alcohol Withdrawal Syndrome," *American Family Physician,* **69**: 1443-1450, 2004.

2.   Kosten, T.R., and O'Connor, PG, "Management of Drug and Alcohol Withdrawal," *New England Journal of Medicine*, **348**: 1786-1795, 2003.

3.   Saitz, R., et al., "Individualized Treatment for Alcohol Withdrawal:  A Randomized Double-Blind Controlled Trial," *Journal of the American Medical Association*, **272**: 509-523, 1994.

4.   Mayo-Smith, M.F., et al., "Management of Alcohol Withdrawal Delirium:  An Evidence-Based Practice Guideline," *Archives of Internal Medicine*, **164**: 1405-1412, 2004.