# Exhibit 57

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

CHERYL GREENE, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF DWAYNE GREENE, DECEASED,

      Plaintiff,           Case No. 2:18-cv-11008-MAG-DRG
                                   HON. THOMAS LUDINGTON

v.

CRAWFORD COUNTY, SHERIFF KIRK
WAKEFIELD, RANDELL BAERLOCHER,
RENEE CHRISTMAN, KATIE TESSNER,
DONALD STEFFES, WILLIAM SBONEK,
TIMOTHY STEPHAN, JOEL AVALOS,
DALE SUITER, AMY JOHNSON, DAVID
NIELSON, LARRY FOSTER, SHON
CHMIELEWSKI, NORTHERN LAKES
COMMUNITY MENTAL HEALTH
AUTHORITY, NANCI KARCZEWSKI
AND STACEY KAMINSKI, LPC,
Individually and Officially and Jointly and
Severally,

      Defendants.

{00818538.DOCX}

GEOFFREY N. FIEGER (P30441)
KEVIN C. RIDDLE (P57435)
Fieger, Fieger, Kenney &
 Harrington, P.C.
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075-2463
(248) 355-5555
(248) 355-5148 (Fax)
k.riddle@fiegerlaw.com

G. GUS MORRIS (P32960)
CHRISTOPHER J. RAITI (P68600)
McGraw Morris, P.C.
Attorneys for Defs. Crawford Co.,
Wakefield, Baerlocher, Christman,
Tessner, Steffes, Sbonek, Stephan,
Avalos, Suiter, Johnson, Neilson,
Foster and Chmielewski
2075 W. Big Beaver Road, Ste. 750
Troy, Michigan 48084
(248) 502-4000
(248) 502-4001 (Fax)
gmorris@mcgrawmorris.com
craiti@mcgrawmorris.com

HAIDER A. KAZIM (P66146)
Cummings, McClorey, Davis
 & Acho, PLC
Attorney for Defs. Northern Lakes,
Nancy Karczewski, and Stacey
Kaminski, LPC
310 W. Front Street, Ste. 221
Traverse City, Michigan 49684-2279
(231) 922-1888
(231) 922-9888 (Fax)
hkazim@cmda-law.com

/

**DECLARATION OF WERNER U. SPITZ, M.D.**

My name is Werner U. Spitz, M.D. I am over eighteen years of age. I have personal knowledge of the facts stated herein and am competent to testify as follows:

1. Pursuant to 28 USC §1746, I declare the following.

2. I was retained by attorney Kevin Riddle to provide expert consulting services in the above captioned matter.

3.　I have provided expert reports dated April 3, 2019, and July 31, 2019, which are attached hereto and incorporated by reference to this Declaration.

4.　I affirm the statements in the attached report and if called to testify at deposition or trial, I would testify to the statements, facts and opinions contained within my expert reports.

5.　I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Werner U. Spitz, M.D.

Executed this 19th day of December, 2019

# WERNER U. SPITZ, M.D., FCAP

*Forensic Pathology and Toxicology*
**23001 Greater Mack
St. Clair Shores, Michigan 48080**

**Phone: (586) 776-2060    Fax: (586) 776-8722**

Diane L. Lucke, B.S.
Administrative Assistant/Office Manager

E-mail: wuspitz@aol.com

April 3, 2019

Kevin Riddle, Esq.
Fieger, Fieger, Kenney & Harrington
19390 West Ten Mile Road
Southfield, Michigan 48075-2463

**Re:   Dwayne Alan Greene, deceased
         Your File No: 18156
         Our Case No:  6698**

Dear Mr. Riddle:

By way of introduction, the following is my abbreviated resume.

I was born in Stargard/POM, Germany. I studied medicine at the University of Geneva, Switzerland and graduated from the Hebrew University Hadassah medical school in Jerusalem, Israel in1953. My entire professional life has been devoted to the practice of Forensic Pathology: In the Middle East, Europe and since 1959, in the United States. I am certified by the American Board of Pathology in anatomic pathology (1961) and in forensic pathology (1965). During my career I have performed or supervised approximately 60,000 autopsies.

From 1953 to 1959, I worked at the Institute of Legal Medicine in Tel Aviv, Israel; From 1959 to 1961, I worked at the Office of the Chief Medical Examiner for the State of Maryland, then from 1961 to 1963, I worked at the Institute of Legal Medicine in West Berlin, Germany after which I returned to Maryland where I was the Deputy Chief at the Medical Examiner's Office. In 1972, I moved to Detroit, Michigan where I was the Chief Medical Examiner for the County of Wayne until 1988. During this time and until 2004, I was also working as pathologist, then Chief Medical Examiner for the County of Macomb.

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
April 3, 2019
Page two


While in Maryland, I was Associate Professor at Johns Hopkins University and the University of Maryland. From 1978, I also held a teaching appointment as Adjunct Professor at the University of Windsor, Ontario, Canada teaching forensic toxicology and at the Traffic Institute at the University of North Florida in Jacksonville teaching traffic accident investigators to understand the mechanisms and identification of injuries. I am a full professor, teaching Forensic Pathology at Wayne State University School of Medicine in Detroit.

I have testified in all states of the United States, including Alaska and Hawaii, and also before the U.S. Congress (Assassination of President John F. Kennedy). I have also testified numerous times in various courts in Windsor and other major cities across Canada.

I have lectured across the United States, in Canada, France, Germany, Israel, South America, Mexico and South Africa.

I am the author and editor of a leading textbook in Forensic Pathology, Medicolegal Investigation of Death, published by Charles C. Thomas, Springfield, Illinois, 2006, now in its 4th edition. This textbook addresses many of the issues in the case at hand in greater detail. Also, I have published over 90 scientific articles in medical journals, mostly peer reviewed. My Curriculum Vitae has been submitted under separate cover.

At your request I have reviewed and evaluated the materials in the aforementioned case, with regard to specific issues concerning the demise of Dwayne Alan Greene (DOB: 6-26-1985).

The materials include:
- Neuropathology report
- Cardiac pathology report
- Toxicology report
- Postmortem examination report
- Autopsy photographs
- Microscopic autopsy tissue slides
- Crawford County Dailey Jail Log Inquiry – Jail Booking System (51 pages)
- Crawford County Sheriff Incident report (16 pages)
- Defendant's Jail record
- Mental health Service request dated 12-7-2017
- Records from Northern Lakes Community Mental Health

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
April 3, 2019
Page three

- Records from Munson Healthcare Grayling Hospital
- Records from Munson Medical Center – Traverse City
- Investigator's report from Grand Traverse Office of the Medical Examiner
- Notes of Jail video taken by various CO's
- Report of Rebecca E. Luethy, RN, MSN, CNS, CCHP
- Deposition transcript of:
    - Lt. John McDonald (Crawford County)
    - CO Joel Avalos (Crawford County)
    - CO Donald Steffes, Jr. (Crawford County)
    - CO Timothy Stephan (Crawford County)
    - CO Amy Johnson (Crawford County)
    - Corporal Tessner (Crawford County)
    - Captain Baerlocher (Crawford County)
    - CO Larry Foster (Crawford County)
    - Corporal Christman (Crawford County)
    - Marvin Townsend (inmate)
    - Terry McCleery (inmate)
    - William Denno (inmate)
    - Wade Schmidt (inmate)
    - Nancy Karczewski (Northern Lakes Community Mental Health)
    - Stacey Kaminski (Northern Lakes Community Mental Health)
    - Joanie Blamer (Northern Lakes Community Mental Health)
    - CO Dale Suiter
    - Sheriff Kirk Wakefield

According to the records, on December 4, 2017, Dwayne Alan Greene appeared before Judge Colin G. Hunter, Circuit Court for Grayling, Michigan in regards to driving an over the road vehicle (ORV) while intoxicated. The judge ordered the county sheriff to perform a PBT analysis to determine the alcohol concentration of Mr. Greene and this revealed a BAC of .194%, whereupon, the judge remanded Mr. Greene to the county jail to be incarcerated.

On December 6, 2017, jail personnel reported seeing Mr. Greene experiencing tremors and hallucinations. Community Mental Health was notified and evaluated Mr. Greene on December 7, 2017. The Community Mental Health worker also documented Mr. Greene having delusional thoughts, illogical speech, psychosis and DTs.

On December 8, 2017, at 7:43 AM, Mr. Greene was found lying on the floor unresponsive and pulseless. Resuscitative efforts were initiated and 911 was called.

Dwayne Greene was taken to Grayling Hospital ER where resuscitative efforts

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
April 3, 2019
Page four

continued until cardiac activity returned, but anoxic encephalopathy had already occurred.

Dr. Mark Olson at the Grayling Hospital communicated with Dr. Navin at Munson Medical Center in Traverse City and this led to a transfer of Mr. Greene to Traverse City for further care.

On December 12, 2017, Dwayne Alan Greene was pronounced dead at Munson, Traverse City.

An autopsy was performed at the Department of Pathology, Western Michigan University Homer Stryker M.D. School of Medicine. This revealed alcoholic cardiomyopathy, hepatomegaly with fatty infiltration of the liver, gastric ulcers, multisystem organ failure due to cardiac arrest and anoxic encephalopathy.

Although, corrections officers and mental health workers realized that Dwayne Alan Greene was experiencing alcohol withdrawal and exhibiting DTs, no one made any attempt to provide him the medical care he needed.

Recognition of a patient who is at risk for alcohol withdrawal and initiating appropriate and timely treatment can prevent more serious complications. Benzodiazepines are drugs of choice for pharmacologic treatment of alcohol withdrawal and DTs.

Arrhythmias usually associated with DTs are mostly tachyarrhythmias which are more risky in the presence of preexisting heart disease, coronary artery disease and hypertension. Tachyarrhythmias are irregular heartbeats that beat faster than normal, as opposed to bradyarrhythmias which beat more slowly. In this case, Mr. Greene's heart weighed 520 – 550 grams, the normal heart weight for a 32 year old male, with a body weight of 181 lbs., 70" tall would be around 320 – 350 grams, not to exceed 400 grams. Obviously, Mr. Greene's heart was enlarged. An enlarged heart is significantly more susceptible for complications. Also, a remote myocardial infraction is described by the cardiac pathologist and further there is evidence of perivascular and interfiber fibrosis in the heart, which are additional findings that would have increased the susceptibility of this heart at the time of need. Minor withdrawal symptoms include: insomnia, tremor, agitation, nausea and headache, excessive sweating and palpitations. An alcohol withdrawal patient may present with a cluster of symptoms with or without manifestations of DTs, although clearly Dwayne Greene was exhibiting DTs. DTs can cause death.

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
April 3, 2019
Page five

Dwayne Greene had health problems. He was alcoholic which must be acknowledged because it requires treatment. In the case of Mr. Greene, it seems that those who observed him realized that he was in need of treatment and yet no one did anything for his welfare, to help him and to keep him safe. His condition could have been monitored and controlled. Instead, he suffered through his young life, he was in jail because of intoxication, he was in alcohol withdrawal that was witnessed but without anybody providing the medical treatment that he needed so urgently.

Dwayne Greene suffered conscious pain and suffering and mental anguish, when he could not sleep, when he was agitated and restless, aimlessly pacing back and forth in his jail cell, shaking, hallucinating, delusional, suffering hyperthermia and sweating.

His longevity could have been normal with medical help. Normal is up to age 80-85, meaning he had 50+ years to look forward to. As it is, his life terminated at age 32.

All my opinions are based on my education, training and experience and are rendered to a reasonable degree of medical certainty.

Sincerely yours,

Werner U. Spitz, M.D.

WUS:dll
dk:ridd040319cor6698

# WERNER U. SPITZ, M.D., FCAP

*Forensic Pathology and Toxicology*
23001 Greater Mack
St. Clair Shores, Michigan 48080

Phone: (586) 776-2060   Fax: (586) 776-8722

Diane L. Lucke, B.S.  
Administrative Assistant/Office Manager

E-mail: wuspitz@aol.com

July 31, 2019

Kevin Riddle, Esq.
Fieger, Fieger, Kenney & Harrington
19390 West Ten Mile Road
Southfield, Michigan 48075-2463

**Re:   Dwayne Alan Greene, deceased**
**Your File No: 18156**
**Our Case No: 6698**

Dear Mr. Riddle:

I am in receipt of the file regarding the demise of Dwayne Alan Greene, deceased, including a recent letter by Dr. Ernest Chiodo dated June 28, 2019.

Dr. Chiodo opined that Mr. Greene may have suffered of schizophrenia, but of course Greene was known to suffer of alcoholism and was diagnosed with alcoholism and was never diagnosed with schizophrenia. Instead, he was found unresponsive four days after appearing in court, on December 4, 2017, where he was heavily intoxicated with a blood alcohol concentration of 194%.

Mr. Greene was found lying on the floor of his cell, unresponsive, not breathing and without pulse on December 8, 2017. The way he was found, it is obvious that he had collapsed suddenly. He was in cardiac arrest when EMS arrived. He was given serial rounds of epinephrine, intubated and started on ventilation. They eventually had a return of spontaneous circulation. His heart responded and his heartbeat returned, but his brain remained inactive, since brain cells are more sensitive to oxygen deprivation, then heart muscle. Mr. Greene was brain dead when he was found. The fact that Mr.

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
July 31, 2019
Page two

Greene's heart continued to function, and function well and adequately, indicate this heart was a normal heart without significant disease.

Mr. Green was then taken to the ER at Munson Hospital Grayling.

Under the circumstances of this case and because the cause of Mr. Green's death was unknown and could have resulted from anything, including foul play, the case was referred to the Medical Examiner for investigation and autopsy.

Based on the autopsy and the circumstantial evidence, where Greene was observed on December 7, 2017, by a mental health worker, who based on her observations Greene presented manifestations of DTs, the death of Mr. Greene was certified by the Medical Examiner as complications of chronic alcohol use and the manner of death was listed as natural.

Dr. Chiodo obviously disagrees with my opinion of what caused Mr. Greene's death and he also disagrees with both Dr. Douglas who performed the autopsy of Mr. Greene and Dr. Cole who examined Mr. Greene's heart. Dr. Douglas and Dr. Cole are both forensic pathologists and function as medical examiners. Both Dr. Douglas and Dr. Cole unequivocally view Greene's death having occurred, as a result of Greene's alcoholism.

Dr. Chiodo in his letter dated June 26, 2017 to Christopher Raiti, Esq., indicates that determination of causation of death due to DTs is a three step process:

**The first step** is that the medical expert or experts opining that a person died due to delirium tremens must first be able to opine to a reasonable degree of medical certainty (more likely than not) that the deceased person actually had delirium tremens.

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
July 31, 2019
Page three

*Answer:* According to the records, Dwayne Greene was a known alcoholic with manifestations of withdrawal. On admission to the jail, he stated he never stopped drinking.

On December 6, 2017, jail personnel reported seeing Mr. Greene experiencing tremors and hallucinations. Community Mental Health was notified and evaluated Mr. Greene on December 7, 2017. The Community Mental Health worker also documented Mr. Green having delusional throughs, illogical speech, psychosis and DTs.

Autopsy revealed evidence of fatty liver which is a manifestation of alcoholism and alcoholic cardiomyopathy. No evidence of other cardiac disease.

*The second step* is an analysis of General Causation. Assuming that the medical expert or experts for the Decedent are able to show that more likely than not Decedent actually had delirium tremens, the medical experts must show that delirium tremens can actually cause death through the claimed mechanism of death.

*Answer:* Mortality from DTs most often result from cardiac arrhythmias, respiratory arrest and circulatory collapse. This is what occurred in the case of Dwayne Greene, when he was found on the floor of his cell unresponsive, pulseless, in cardiac and respiratory arrest and circulatory collapse.

*The third step* is determination of the Specific Causation. Determination of Specific Causation is the process of determining whether or not a particular decedent died due to the claimed cause. The recognized scientific methodology for a physician to determine Specific Causation is a differential diagnosis of etiology. Determination of Specific Causation requires that the physician rule out other causes of death other than from delirium tremens. Even if the medical expert or other experts for Decedent are able to show that the decedent actually had delirium tremens and that delirium tremens can

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
July 31, 2019
Page four

actually cause death through the mechanism proposed by the medical experts for Decedent, those medical experts must eliminate, or at least minimize the likelihood, that Decedent died due to a cause other than delirium tremens. Otherwise those medical experts are not able to opine to a reasonable degree of medical certainty (more likely than not) that the cause of Decedent's death was due to delirium tremens.

*Answer:* Dwyane Greene died as a result of the manifestations given under Step two. The death certificate clearly indicates the cause of death was due to "Complications of chronic ethanol use."

Dr. Chiodo further indicates that plaintiff's experts must give their opinions within a reasonable degree of medical certainty, which I find strange since Dr. Chiodo does not abide by this rule himself. There is no indication in the records that Dwayne Greene was ever diagnosed with schizophrenia. I am also unaware of any indication in the records that Greene used cannabis products.

More compelling is the knowledge that untreated DTs can cause fatal tachycardia in a healthy heart. Also, clinical manifestations of congestive heart failure were not diagnosed and do not show in the records. The heavy lungs would have occurred during the process of arrhythmia and cardiovascular collapse, prior to arrival of EMS.

Medical examiners determine cause and manner of death based on autopsy findings and circumstances surrounding the death.

None of this evidence is negligible. Medical Examiner's do not take lightly the certification of cause and manner of death. With all due respect to Dr. Chiodo, I disagree with his determination that Dwayne Greene died of some obscure condition, possibly schizophrenia, where this 32 year old gentleman, Dwayne Greene is known to have suffered of alcoholism with a history of DTs and was diagnosed by qualified physicians who at different times saw Greene and were involved in his care.

Kevin Riddle, Esq.
**Re: Dwayne Alan Greene, deceased**
July 31, 2019
Page five

Dr. Chiodo is fully aware that my duties as a forensic pathologist, in positions of medical examiner is to certify cause and manner of death, to a reasonable degree of medical certainty and I have been doing that for over 60 years. It is only of late, that I have retired from county service.

DTs do not often terminate in death, but when it does, the death is sudden as a result of arrhythmia and cardiovascular collapse, as described by Dr. Douglas in her report.

All facts considered, Dr. Chiodo gives a lot of nonapplicable ideas of what Mr. Greene could have died, but when it comes to considering the facts of the case, the preexisting history and the findings at the autopsy, including the microscopic examination, he leaves us wondering.

Based on the material reviewed to a reasonable degree of medical certainty, it is my opinion that, Dwayne Greene, 32 year old Caucasian male, died of delirium tremens. This is supported by his medical history, including testimony of family and friends, how he died, what his autopsy showed, and the absence of any manifestations or any type of evidence to implicate another cause of death, at the same level of certainty.

All my opinions are based on my education, training and experience and are rendered to a reasonable degree of medical certainty.

Sincerely yours,

Werner U. Spitz, M.D.

WUS:dll
dk:ridd073119cor6698